FIRST NATIONAL BANK *v.* MACK.

[57 Pac. 326.]

1. NOTES—ERASURE—EVIDENCE.—Where an action is brought on a promissory note by an indorsee, and the execution of the note is admitted, but its transfer to plaintiff is denied, the note itself is competent evidence for the purpose of proving such transfer, though it appears to have an erased indorsement that is unexplained.

2. EVIDENCE—VARYING TERMS OF WRITING.—In an action by a transferee of a note against the maker, who claimed that the note was transferred by the payee's agent without authority, testimony of the agent that, as the payee's sales agent, he was authorized to take notes in payment, and indorse and sell them, and remit the payee's share of the proceeds, does not vary the terms of the note, and is admissible.

3. RELEVANCY OF EVIDENCE.—In an action on a note which had been indorsed and sold by an agent of the payee, evidence of the terms of the agency is relevant on an issue whether such agent had authority to sell and indorse notes.

4. TRIAL—INSTRUCTION.—An instruction that a question is the turning point in the case is not the equivalent of the statement that it is the only point in the case.

5. TRIAL—INSTRUCTIONS.—An instruction declaring that the authority or apparent authority of an agent to sell, transfer, and indorse a note given to him for his principal is the turning point of a case, is not erroneous where the developments at the trial have reduced the controversy, so far as the jury are concerned, to that point alone.

6. IDEM—POWER OF AGENT TO INDORSE NOTE.*—An instruction is not objectionable, as giving the jury to understand that the right of an agent to take and sell negotiable paper, and the right to indorse it in the name of his principal, are one and the same, where the question submitted by the charge, as a whole, is whether the agent's authority extended to the sale, transfer, and indorsement of such paper.

7. ATTORNEY'S FEES IN NOTE—QUESTION FOR JURY.—In an action on a note stipulating for an attorney's fee, where the allegation of the complaint that a certain sum was a reasonable fee is denied, and no evidence is introduced on such issue, judgment cannot be given for any sum as such fee; the amount is a disputed question, and must be settled by the jury: *Cox* v. *Alexander*, 30 Or. 438, followed.

8. POWER OF SUPREME COURT TO MODIFY JUDGMENT.†—The supreme court may modify a judgment in a law action by remitting the excess where it is apparent from the record, or reverse the case if the reduction be not accepted.

From Washington :   THOS. A. MCBRIDE, Judge.

Action by the First National Bank of Hillsboro against Lizzie A. Mack and another. On June 15, 1894, the defendants executed and delivered to Wiley B. Allen & Company their obligation, denominated a "promissory note," whereby they undertook to pay said company on January 1, 1895, $110, with interest at the rate of eight per cent. per annum, and a reasonable attorney's fee in case suit or action should be instituted to collect the same or any part thereof. It was given for the purchase

---

*NOTE.—The Power of Agents to Indorse Negotiable Paper is the subject of a note to *Gate City B. & L. Asso.* v. *Nat. Bank of Commerce* (Mo.), 27 L. R. A. 401.

See, also, note on Power of Agent to Execute Note in Principal's Name, 63 Am. St. Rep. at p. 635.—REPORTER.

†NOTE.—On this point see *Mackey* v. *Olssen*, 12 Or. 429; *Fiore* v. *Ladd*, 29 Or. at p. 535; *Cochran* v. *Baker*, 34 Or. 555.—REPORTER.

price of an organ, which, by the terms thereof, was to remain the property of Wiley B. Allen & Company until the note was fully paid. The plaintiff sues to recover upon this note or obligation, and sets it out *in hæc verba* in the complaint, and further alleges that Wiley B. Allen & Company duly sold, assigned, transferred, and delivered the same to the plaintiff, and that $25 is a reasonable attorney's fee for the prosecution of the action. The defendants answer, admitting the execution of the note set out, but denying the assignment and transfer, and the reasonableness of the attorney's fee. For a further defense they allege, among other things, that at the time of the execution of the note it was agreed by and between them and the said Wiley B. Allen & Company that the same might be paid by the defendants in potatoes at the rate of $1 per one hundred pounds, that such agreement was indorsed on the obligation, and that they were ready and willing to pay the same according to such agreement. They further allege that the note was delivered to one A. A. Meade, the agent of Wiley B. Allen & Company, and that said agent indorsed and transferred the same to plaintiff without any right or authority for so doing. The reply puts in issue all these allegations, except the one touching the delivery to Meade, the agent of Wiley B. Allen & Company. Trial was had, and a verdict rendered for the plaintiff in the sum of $123 ; but the court entered judgment for an additional sum, equivalent to the amount of the attorney's fee prayed for. The defendants appeal.       Modified and Affirmed.

For appellants there was a brief over the names of *Cake & Cake* and *Arthur C. Spencer,* with an oral argument by *Mr. William M. Cake.*

For respondent there was a brief and an oral argument by *Mr. Thos. H. Tongue.*

MR. CHIEF JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

At the argument a motion was filed to strike out the 'bill of exceptions because it had not been allowed by the court below, nor filed within the time prescribed by law. But this was done under a misapprehension as to the real condition of the record, and therefore requires no further notice.

1.  At the trial of the cause the plaintiff called as a witness its cashier, J. D. Merriman, who testified, in substance, that the bank purchased the note on the fifteenth day of June, 1894; and thereupon the obligation was offered and admitted in evidence, over the objection of the defendants that it was incompetent because it appeared that an erasure had been made of an indorsement thereon, which had not been explained or otherwise accounted for.  The action of the court in this respect is assigned as error.  The objection is based upon the statute (Hill's Ann. Laws, § 788) which requires that a party producing a writing as genuine, which has been altered, or appears to have been altered, after its execution, in a part material to the question in dispute, shall account for the appearance or alteration before he shall be permitted to introduce it.  That there had been an erasure was apparent.  It was a complete obliteration, so that nothing remained to indicate what had been erased. The point is, was the erasure or obliteration material to the question in controversy?  The instrument sued on is set forth in the complaint, and the defendants expressly admit that it is the identical one which they executed and delivered to Wiley B. Allen & Company; hence it was wholly unnecessary to produce it at the trial, or to introduce it in evidence, for the very fact of its existence in the form as alleged was admitted.  If a writing ap-

pears to have been altered in a material respect, the statutory presumption is that it was done subsequent to execution, and, unless explained, it is not competent evidence of what it purports to recite ; so that the objection goes to the competency of the instrument to prove the agreement of the parties. But the establishment of the .agreement is not a question in dispute, because the parties have obviated it by a perfect agreement, upon the record and by the pleadings, touching its terms and conditions. The only sufficient reason for introducing it was to establish its indorsement and transfer by the payee to the plaintiff, and for this purpose it must be conceded that it was altogether competent.

There is a seeming complication touching the matter, by reason of the defendants' plea that at the time of the execution of the said note it was agreed by and between them and the payee that it might be paid by the delivery of potatoes at the rate of $1 per one hundred pounds, and that said agreement was indorsed thereon. But these averments of defendants do not countervail the effect of their admission of the execution and delivery of the identical note or obligation sued on. They seem to have proceeded upon the theory that the indorsement constituted a separate agreement, modifying the original ; and the defense insisted upon was that the obligation upon which the action was instituted had been discharged by a fulfillment of, or a willingness to comply with, the separate agreement. No doubt, an indorsement upon a promissory note, varying or modifying its terms, made contemporaneously with the execution and delivery thereof, becomes part and parcel of the note itself ; but where the note is sued on, disregarding the indorsement, and the defendant admits the execution as alleged, then the indorsement cannot be material in the establishment of the plaintiff's cause of action. If defendants had

controverted plaintiff's allegations touching the terms of the obligation, and set up the agreement as modified by the indorsement, this would have presented a controversy touching the true agreement, and then the erasure would have presented an obstacle to its introduction in evidence ; but not so where the existence of the obligation as sued on is expressly admitted.

2.    During the course of the trial the plaintiff called A. A. Meade as a witness in its behalf, who testified, in substance, that on the fifteenth day of June, 1894, he was engaged in selling pianos and organs for Wiley B. Allen & Company, and was the person mentioned in the pleadings as the agent of said company ; that he acted as such agent in the sale of instruments for several months, and was authorized to receive payment and to take notes therefor ; that he sold the note in controversy to the bank, and the writing on the back thereof appeared to be his. He was further permitted to testify, over the objection of the defendants, that Wiley B. Allen was the manager of Wiley B. Allen & Company, that his dealings with the company were through Mr. Allen exclusively, that on one occasion he had asked Allen with reference to discounting notes to the bank, and that Allen had said it was perfectly satisfactory to him. He further testified that the pianos and organs were billed to him at a certain price, and the amount received above such price was to belong to him ; that the organ for which the obligation in suit was given was billed to him at something like $70 ; that he had an arrangement whereby, in case he sent in the cash, he was to receive ten or twelve per cent. discount ; that he did not remember how much he was to receive for the note, but that it was over $70, and he sent the price of the organ, less the money discount, to Wiley B. Allen & Company ; that he had sold other notes in pursuance of his busi-

ness relations with the company; that he did not know whether Allen knew it or not, but that he sent the cash to him in every instance. One ground of objection urged is that the testimony tended to vary the terms of the obligation sued upon. It has no allusion, however, to the terms of that instrument, but relates entirely to the pre-existing arrangements between Wiley B. Allen & Company and Meade, in pursuance of which he was acting as the agent of the company.

3. Again, it is urged that the testimony showing the nature of the agreement between the company and the witness touching the sale of pianos and organs, and especially that which tends to show that the witness had a personal interest in the proceeds of sale, was immaterial and irrelevant, and operated prejudicially to defendants. But such is clearly not the case. The sole purpose of its introduction was to establish the authority of Meade to act as the agent of Wiley B. Allen & Company to sell, transfer, and indorse the note sued upon. For that purpose it was perfectly relevant. It served to indicate the mode of dealing between the company and Meade, the manner in which he was permitted to deal with others, and to establish the real relationship existing between them, by which third persons should be controlled and governed.

4. By the general charge the jury was instructed, among other things, in effect: That if Meade was the agent of Wiley B. Allen & Company, and as such had authority to sell the notes taken for the sale of instruments, and remit to Wiley B. Allen & Company their share of the proceeds, the bank became the owner of the note in question; that if he was not such agent, and had no such authority, then the bank did not get any title by his indorsement thereon of the name of the company; that the question is: Was he the agent? Did he have

authority or apparent authority to take paper of this kind, sell it, and remit them the proceeds? They were told that this was the turning point of the case. That such authority must be shown by proof that he was specially authorized to do it, or by a course of dealing that would be equivalent thereto ; that if a man, with knowledge of the facts, allows another to set himself up as his agent, to deal in and indorse promissory notes, and allows him to do that for a long time, until he succeeds, in and by his acquiescence, in inducing the public to believe that this man is his agent, he is estopped ; that, if he gives him apparent authority, he cannot set up any secret instructions between them, not made known to the public ; he could not hold the man out to the world as his agent, by constant recognition of his transactions in any particular manner, and then say there was some secret agreement between them whereby such transactions were not authorized. A further instruction was that the burden of proof is upon the plaintiff to show that Meade was their agent, with authority to make this kind of transfer, and sell these notes and dispose of the proceeds ; that the bank must know the limit and extent of his authority, and it is for the jury to determine whether it has established the fact of his agency or not. The defendants complain because the court indicated to the jury that the question whether Meade was the agent of Wiley B. Allen & Company, with authority to take paper, sell it, and remit the proceeds, was the turning point in the case. This is not the equivalent of saying to them that it was the only point in the case, but that it was the pivotal point, and, without a finding that Meade was the agent of Wiley B. Allen & Company for the purposes of sale and transfer of the paper, that the plaintiff must fail.

5.  But, if defendants' construction be given its full weight, the court is still right, as the developments at the trial had reduced the controversy, so far as the jury were concerned, to that point alone.  The defendants had utterly failed in their separate defenses, and the only controversy left was touching the ownership of the paper by the plaintiff, and this arose upon the denials of plaintiff's allegations of ownership.

6.  The other phase of the objection is that the court gave the jury to understand that the right to take and sell paper, and the right to indorse it in the name of the principal, are one and the same.  But the instruction will not bear such an interpretation.  The question submitted, when the charge is read as a whole, was whether Meade's agency extended to the sale, transfer, and indorsement of such paper, and especially to the note in question, so as to pass title to the plaintiff.  Neither is the instruction open to the objection that it assumes that Allen had knowledge of the sale and transfer of notes theretofore made by Meade.  There was testimony to go to the jury on that point, and the matter was properly left to their determination.

Error is also predicated upon the court's refusal to instruct, at the request of the defendants, that Meade's right to indorse the note would not be affected by any interest which he might have in the paper, and, therefore, that the jury should not consider such interest in determining the right or authority of Meade to transfer the note in the name of Wiley B. Allen & Company.  This matter was, however, in effect, covered by the general charge.  The jury were so clearly instructed that Meade must have been the agent of Wiley B. Allen & Company, with authority to sell, transfer, and indorse its paper, before the plaintiff could have obtained title, that they undoubtedly understood the question of his

agency was not affected by any interest he may have had in the note itself ; and the refusal to so instruct could not have operated prejudicially to the defendants.

7.   After the verdict, the court, at plaintiff's request, entered judgment for the whole of the attorney's fee prayed for, in addition to the amount of the verdict. There was no evidence introduced at the trial touching the reasonableness of the fee, and, while there was an issue in the pleadings respecting it, the matter was not contested before the jury, and they returned a verdict for the amount of the note and interest, disregarding such fee.   The defendants subsequently moved for a modification of the judgment by striking out such attorney's fee, but this was refused by the court, and error is assigned. · Under the ruling of *Cox* v. *Alexander*, 30 Or. 438 (46 Pac. 794), the assignment is well made, and the motion should have been allowed.

8.   The judgment below will therefore be reversed unless within ten days from this date the plaintiff shall remit the amount of such attorney's fee upon the record here, but upon such remission it will be affirmed ; the costs of the appeal to be taxed against the plaintiff.

MODIFIED AND AFFIRMED.

Decided 22 May ; rehearing denied 11 August, 1899.